279 So.2d 164 (1973)
STATE of Louisiana
v.
Charles Ellis BELL.
No. 52928.
Supreme Court of Louisiana.
June 11, 1973.
*165 Carey J. Guglielmo, John P. Everett, Jr., Kantrow, Spaht, Weaver & Walter, Baton Rouge, for defendant-appellant.
Willaim J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., M. Stephen Roberts, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
Charles Ellis Bell was charged with armed robbery (R.S. 14:64), convicted as charged, and sentenced to serve 40 years in the Louisiana State Penitentiary. Twenty-eight bills of exceptions are in the transcript of appeal, but the defense has presented its case in this court through specifications of error. We find reversible error under Specification (C), which alleges that the court erred in repeatedly allowing the State to introduce impeachment evidence without instructing the jury on each occasion that the evidence was admissible only on the issue of the witness's credibility and not as substantive evidence of the defendant Bell's guilt.
At the various times when impeaching evidence was introduced on this trial, the judge gave no instructions on the limited purpose for which that evidence was received. The State so concedes, and the testimony attached to the bills of exceptions bears this out. Counsel for defendant did not ask the judge to give such instructions. Even so, however, under a long line of jurisprudence it was error for the judge not to give the appropriate instructions to the jury at the time the impeaching evidence was admitted.
"* * * When an attempt is made to impeach a witness by the introduction of prior inconsistent statements the judge knows at once the limited purpose for which such evidence can be accepted. And it should be incumbent on him, and his duty, to so advise the jury without leaving it to the probability that, being laymen and not informed as to the niceties of the law, the members thereof will give it improper application.
"The danger of such a probability is clearly recognized by this court in State v. Willis, 241 La. 796, 131 So.2d 792, wherein we observed that the judge should instruct the jury as to the limited effect of impeachment evidence at the time it is admitted, and should not wait to include it later in his general instructions when such body would have to apply the instructions in retrospection. * * *" (Emphasis supplied.) State v. Barbar, 250 La. 509, 197 So.2d 69 (1967); and cases there cited.
Both the State and the defense cite State v. Ray, 259 La. 105, 249 So.2d 540 (1971), and a reaffirmation of our holding there is necessary. In Ray we repudiated the rule of Barbar and its predecessors that the duty was upon the judge to give the appropriate instructions regarding impeachment evidence and that his failure to do so was reversible error. We held in Ray that, "following the finality of this decision," the defendant must specifically request the trial court, at the time of admission of the impeaching evidence, to caution the jury *166 on the limited purpose for which the evidence is received, and that without such a request he cannot avail himself of the court's failure so to charge. Ray is not applicable here, however, for its holding was specifically given prospective effect only. The present case was tried in March, 1971, and the opinion in Ray on rehearing was rendered June 14, 1971. The former jurisprudence therefore states the law applicable here, and under that jurisprudence a reversal is required.
Specification of Error (A), involving several bills of exceptions, also shows reversible error. The State in opening statement said over objection that it would offer evidence of four other robberies in which the defendant Bell had participated. Not one scintilla of evidence, however, was offered on the trial connecting the defendant with two of these robberies. The State sought to connect Bell with the other two robberies through testimony elicited in its efforts to impeach its witness Leroy Green. (Our finding of reversible error under Specification (C) was made in connection with this testimony.) The impeaching testimony could be used only to attack the credibility of the witness Green. See State v. Barbar, supra, and cases there cited. Any such testimony which linked Bell to other robberies had no probative value as to his guilt or innocence of the crime charged, and could not be used in this indirect and devious fashion to show guilty knowledge, system, and intent under R.S. 15:445 and 446.
The conviction and sentence are reversed and set aside, the case is remanded to the trial court for further proceedings.
CALOGERO, J., concurs.
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents for reasons assigned.
SANDERS, C. J., dissents for reasons assigned by MARCUS, J.
SUMMERS, Justice (dissenting).
Charles Ellis Bell was charged by bill of information with the armed robbery of L. H. Dugas on April 25, 1970 at Kroger's supermarket. The State contended that Bell, Leroy Green and Sterling Jordan committed this robbery, with Green and Jordan going into the store armed with a shotgun and pistol and Bell waiting outside in the getaway car.
After trial by jury, Bell was found guilty and sentenced to the State Penitentiary.
Twenty-eight bills of exceptions were reserved during the trial. Defense counsel presents his argument under seven specifications of error in which the bills of exceptions presenting the issues are grouped.

I.
It is first contended under Specification A that the court erred in allowing the State to get before the jury, under the guise of impeachment, evidence of other robberies in which Bell was allegedly involved.
In its opening statement the State announced its intent to introduce other armed robberies committed by Bell, Green and Jordan to prove the system and modus operandi of Bell in the crime charged. According to the State, the system in all these robberies was that Jordan and Green armed with a shotgun, actually entered the store and robbed the victim, while Bell remained outside close by in the getaway car. While the State announced its intent to introduce several of the robberies in this regard, only three robberies were mentioned in testimony at the trial; the Kroger's robbery for which the defendant was on trial, the Ancona's Grocery Store robbery on April 1, 1970 and a Burger King robbery on April 25, 1970.
*167 Evidence was presented at the trial that Green was in the Kroger store with a pistol participating in the robbery. Green had given police a taped statement after his arrest detailing the robberies he had been involved in and implicating Jordan and Bell. He was called to testify and repudiated his prior statement admitting the various robberies implicating Bell and Jordan. The State pleaded surprise and was allowed to question him as a hostile witness. He was then questioned concerning those other robberies and the detectives who took his statement were also questioned in that regard. It is the examination of Green and the detectives concerning these other robberies mentioned in his prior statement and denied by Green during the trial which is the basis for this defense contention.
Although "It is not competent to impeach a witness as to collateral facts or irrelevant matter," La.R.S. 15:494, a witness' testimony may be impeached on matters relevant at the trial. Thus, since evidence of other similar crimes is admissible and relevant to establish intent, system or modus operandi, La.R.S. 15:445-446, testimony regarding this "relevant" evidence may be impeached. Moreover, all prerequisites to impeachment were present here. The witness showed hostility by refusing to answer questions concerning which he had given a prior statement. He repudiated the voluntary character of his statement, claiming that the officers who took the statement made promises. And the State properly limited the impeachment evidence to the subject matter of the prior contradictory statement. La.R.S. 15:487.
Defense counsel contends, also, that it was error for the State's attorney to announce in his opening statement that he would offer evidence to show Bell's involvement in four other robberies when only two other robberies were mentioned at the trial. It is said the reference to other crimes, not proven, implanted the seed of guilt of these unproven crimes in the minds of the jury.
The State's attorney is required to make an opening statement setting forth in general terms the nature of the evidence by which the State expects to prove the charge. La.Code Crim.Proc. 765-769. The object of this law is to place the defendant on notice of the facts he has to face at the trial. At least this object is served by overstating what is intended to be proved. Thus, it is difficult to ascertain the prejudice a defendant incurs when the State does not produce evidence against him which the State's attorney declared he would produce. A strong inference would seem to follow under these circumstances that the State could not prove its whole casean inference favorable to the accused. However, conceding arguendo, defense counsel's point of view, that guilt of these unproven crimes is implanted in the minds of the jury when they are mentioned in the opening statement and not proven at the trial, I cannot find this vague effect to be a proper basis for reversing this conviction. Unless it is shown that the State's attorney in bad faith mentioned these other crimes when he was without any evidence of them, the Court should not hold him to their proof if he found such proof unnecessary and merely cumulative. Obviously, this is what he decided, for the evidence he did produce proved adequate for conviction. Vicissitudes of a trial are often unforeseeable. In an abundance of caution the State must declare its whole case in the opening statement. If the evidence later proves to be cumulative, however, I do not feel it must be produced. After all, two previous armed robberies are enough to prove system.
While the record does not reflect that the judge admonished the jury at the time the impeachment evidence was offered, he did instruct the jury in his charge that when a contradictory statement is introduced by the State for impeachment purposes it should not be received as independent evidence of the facts stated therein by the accused, but only as going to the credibility of the witness himself.

*168 II.
In Specification A it is contended that the court erred in allowing the State to go into the subject matter of an alleged prior statement of the witness Green under the guise that the evidence was for impeachment purposes.
The reasons assigned under Part I of this opinion dispose of this contention. It should be noted, however, that the trial judge and the State's attorney carefully observed the admonition in Section 493 of Title 15 of the Revised Statutes. Green was first asked whether he made the statement which was contradictory to his testimony at the trial. His attention was called to the time, place and circumstances and to the persons to whom the alleged statement was made. As previously noted, Green admitted making the contradictory statement, asserting he was induced to do so by promises of the officers who took the statement.
When the impeachment evidence was introduced defense counsel did not request a precautionary instruction from the judge to the jury that the impeachment evidence was only to be considered on the question of credibility, nor did defense counsel object to the fact that such instructions were not given at the time of the introduction of the impeaching evidence. Notwithstanding, he claims reversible error resulted when the trial judge failed to give those instructions at the time he objected to the impeachment evidence.
Reference has previously been made to the fact that, although the precautionary instruction was not given when the impeachment evidence was admitted, the trial judge did charge the jury correctly on the subject.
Aside from the obvious fact that this issue is not before us because no objection was made to the failure of the trial judge to instruct the jury and no bill of exceptions was reserved (La.Code Crim.Proc. arts. 841-845), there are other considerations which pursuade me that this contendion has no merit.
The rule of law that a defendant must request cautionary instructions in order to claim error when the trial judge fails to give them was established by this court in a decision rendered January 18, 1971 in State v. Ray, 259 La. 105, 249 So.2d 540. There we said, "Accordingly, in cases tried hereafter, we shall require a defendant to specifically request the trial judge to give such a limiting instruction in order to avail himself of its omission." A rehearing was subsequently granted. In the opinion on rehearing rendered in June 1971 it was said that the rule would apply "following the finality of this decision," and the original decree was reinstated. The instant case was tried March 8, 9, 10 and 11, 1971. Thus the rule was perhaps not in effect during this trial. The rule prior to the decision in State v. Ray was that when a witness other than the defendant is impeached by the admission of a prior inconsistent statement incriminating the defendant, the statement is admissible only on the issue of credibility and not as substantive evidence of the defendant's guilt. Our cases held that the failure to caution the jury as to the limited purpose of the inconsistent statement is error despite defendant's failure to request such an instruction. State v. Barbar, 250 La. 509, 197 So.2d 69 (1967).
Since this rule was not statutory, and because the jury was properly charged by the judge before their deliberations, I can find no prejudicial error warranting a reversal. Cases to the contrary were decided before the enactment of Article 921 of the Code of Criminal Procedure. Under the circumstances of this case, the omission of the limiting instruction only at the time the evidence was heard, resulted in no miscarriage of justice, nor did it involve a violation of a constitutional or statutory right. La.Code Crim.Proc. art. 921. The instruction was in fact given and it is presumed that it was obeyed by the jury.
In my view the conviction and sentence should be affirmed.
I respectfully dissent.
*169 MARCUS, Justice (dissenting).
I do not find the errors complained of resulted in a miscarriage of justice, was prejudicial to the substantial rights of the accused, or constituted a substantial violation of constitutional or statutory rights. Article 921 of the Code of Criminal Procedure. Accordingly, I find no reversible error.
I respectfully dissent.