841 So.2d 874 (2003)
STATE of Louisiana
v.
Silas ANTOINE.
No. 02-KA-1068.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 2003.
*876 Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Appellate Counsel, Nancy Miller, Vincent Paciera, Jr., Gretna, LA, for Appellee, State of Louisiana.
Frank Sloan, Louisiana Appellate Project, Mandeville, LA, for Appellant, Silas Antoine.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., THOMAS F. DALEY, and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, JUDGE.
On April 5, 2000, the Jefferson Parish District Attorney's Office charged defendant, Silas Antoine, with armed robbery in violation of La. R.S. 14:64.[1] After defendant was arraigned and pled not guilty, he filed omnibus pre-trial motions, including motions to suppress identification and his statement, which were both denied. On December 7, 2001, after a two-day trial, the twelve-person jury unanimously found defendant guilty as charged. On December 13, 2001, the trial judge sentenced defendant to 60 years at hard labor without the benefit of parole, probation or suspension of sentence.
FACTS
On September 14, 1999, James Stanford, his girlfriend, Natacha Kimbrough, and their one-year-old daughter returned home between 2:00 a.m. and 3:00 a.m. to their apartment on Aberdeen Drive in Harvey. James brought their baby inside and laid her on the couch then went back outside to help Natacha unload the bags of groceries from the car. He grabbed several bags and went inside. Natacha followed with the remaining bags after locking the car doors. As Natacha was approaching the apartment, a man put a gun to her back and forced her inside. Two more men followed them into the apartment.
Once inside, one perpetrator, armed with a handgun, ordered Natacha to sit on the couch next to the baby and a second perpetrator, armed with an AK 47 assault rifle, ordered James to get on his knees. The third perpetrator searched the apartment. The assailant with the handgun put it to the baby's head and said "give it up" or he would kill the baby. Meanwhile, the assailant with the AK 47 hit James on the head.
*877 James gave the perpetrators his car keys and told them whatever they were looking for was in the car. The three perpetrators left and James immediately closed and locked the apartment door. James subsequently discovered his 1977 blue Cutlass was missing.
When the police arrived, James identified one of the perpetrators as Demarco Washington, a man that had attended high school with James. The other two perpetrators had their faces somewhat covered; neither James nor Natacha recognized them or could later identify them.
James' stolen Cutlass was discovered within a few hours of the robbery with the radio and speakers missing. When the vehicle was dusted for fingerprints, a match was made to someone other than defendant. After further investigation, however, defendant was implicated in the crime and later arrested. After he was arrested, defendant gave a statement to the police admitting his involvement in the armed robbery.
On April 5, 2000, defendant was charged with armed robbery. On December 5, 2001, trial commenced. After hearing the evidence presented by the State, the jury unanimously found defendant guilty as charged. Defendant appeals his conviction and sentence.
In his first assignment of error, defendant argues that the trial court erred in denying the defense motion for mistrial. Specifically, defendant contends that the prosecutor's reference in her opening statement to Stephen Roy's identification of defendant as a participant in the armed robbery warranted a mistrial. Defendant asserts that he was prejudiced by this reference because defense counsel was unable to cross-examine Roy about this statement since Roy did not testify at trial. The State, relying on State v. Horne, 554 So.2d 820 (La.App. 5 Cir. 1989), responds that the prosecutor was not in bad faith and the defendant was not substantially prejudiced so a mistrial is unwarranted.
In her opening statement, the prosecutor remarked:
The latent prints ... come back to a Stephen Roy. Stephen Roy is here today. Stephen Roy has pled guilty to this caseto this armed robbery. He's here and he's going to testify, and I'll be very frank with you, ladies and gentlemen, I don't know what he will tell you. I do not know.

* * *
Detective John Carol [sic] was assigned to this case. He interviewed Stephen Roy and at the time of the interview, [Roy] gave a taped statement. He said it was himself, a guy named Demarco Washington, and a guy named Daniel, who did this armed robbery.
A little while later he gave another taped statement saying that it wasn't really Daniel, it was a guy who went by the street name of ChuckSilas Antoine.
At that point, defense counsel moved for a mistrial on the basis that the State referred to certain statements by a witness who may not testify at trial. The trial court denied the motion for mistrial as premature.
Subsequently, the State called Stephen Roy to testify. Roy refused to respond to any questions, which prompted the trial court to hold him in contempt of court. Defense counsel renewed his motion for a mistrial arguing that defendant was prejudiced by the State's reference to Roy's testimony in its opening statement since the State could not produce Roy's testimony at trial. The trial court again denied the motion for mistrial finding the State was in good faith in its reference to Roy's *878 testimony in its opening statement because the State was under the impression that Roy would testify.
Additionally, the trial court found that defendant was not substantially prejudiced by the prosecutor's remarks during opening statements noting, "when the statement was made it was veryin opening, it was, in my opinion, rather insignificant. She [the prosecutor] didn't dwell on itit was just part of a series of things they said that the State was going to prove."
Mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. State v. Ballay, 99-906 (La.App. 5 Cir. 2/29/00), 757 So.2d 115, 126, writ denied, 00-0908 (La.4/20/01), 790 So.2d 13. Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. Id.
La.C.Cr.P. art. 766 requires the State to give an opening statement explaining "the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge." In State v. Green, 343 So.2d 149, 151 (La. 1977), the Louisiana Supreme Court explained:
[t]he prosecutor's statement is not evidence and has no probative force. Rather, it is designed to inform the jury so that they may understand the evidence as it unfolds and to protect the defendant from surprise.
This Court has held that "[w]hen a prosecutor details evidence in his opening statement which is subsequently not admitted, he takes the risk that a mistrial may have to be granted." State v. Horne, supra at 824. The general rule is absent bad faith on the part of the prosecutor or clear and substantial prejudice, the reference in the opening statement to evidence later ruled inadmissible or not produced is not a ground for a mistrial. State v. Green, 343 So.2d at 151; State v. Horne, 554 So.2d at 824. A trial court's determination as to the good faith of the prosecutor is entitled to great weight. State v. Green, supra at 152.
In Horne, supra,[2] defendant was charged with first degree murder. The prosecutor's opening statement set forth details of the murder which were to be established by the testimony of two codefendants who had already pled guilty in connection with a plea agreement wherein they agreed to testify against defendant. When the State called the two witnesses to the stand to testify, the witnesses refused to answer any questions.
The defendant in Horne objected to the State's opening statement but, rather than moving for a mistrial, defendant waited until after the guilty verdict and moved for a new trial because the State failed to produce evidence referred to in its opening statement. This Court concluded the denial of the new trial was proper under La C.Cr.P. art. 851.
In its analysis, the Horne court reiterated the general rule that the failure of the State to produce evidence referenced in the opening statement absent bad faith or *879 clear and substantial prejudice is not a ground for a mistrial. This Court concluded that the State was not in bad faith when it referred, in its opening statement, to testimony that it believed, based on plea agreements, would be elicited from two witnesses but found rather that the State was surprised by the witnesses' refusal to testify. This Court also noted that the jury was advised twice that the argument of counsel was not evidence.
Here, the trial judge specifically found the prosecutor was in good faith when she referred to Stephen Roy's testimony in her opening statement. Our review of this record reveals that even defense counsel, who subpoenaed Roy, also expected Roy to testify. The trial court's determination regarding the good faith of the prosecutor is entitled to great weight. On appeal, we will not disturb that finding absent abuse of discretion. We have found nothing in the record that indicates that the trial judge abused his discretion.
The trial court also specifically found defendant was not substantially prejudiced by the State's reference to Roy's testimony in opening statement. Again, we find no error in the trial court's ruling. The trial court specifically instructed the jury that the opening statements made by the attorneys were not evidence. Based on Horne, supra, this instruction was sufficient to prevent substantial prejudice to the defendant where evidence is referred to in opening statement but not later produced.
Additionally, as noted by the trial court, the prosecutor's reference to Roy's testimony in her opening statement was minimal and was not the main focus of the statement. Furthermore, according to the prosecutor's opening statement, Roy's testimony would implicate defendant as a participant in the armed robbery. In his own statement to the police, defendant confessed to his participation in the armed robbery. Based on the foregoing, we cannot say that defendant was prejudiced by the State's failure to produce evidence of Roy's identification of defendant as a participant in the crime. Defendant's first assignment of error lacks merit.
In his second assignment of error, defendant argues that the trial court erred in permitting the hearsay identification of the defendant by Detective John Carroll. He specifically contends that the trial court erred in allowing hearsay into evidence when the trial judge allowed Detective John Carroll to testify that Stephen Roy identified defendant as a participant in the armed robbery. He contends the State used Deputy Carroll's testimony regarding Roy's identification of defendant was inadmissible because it was introduced to prove the truth of the matter spoken, that defendant was identified by his coperpetrator as a participant in the armed robbery. Defendant further asserts the erroneous admission was not harmless error.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(A)(1) and (C). Hearsay evidence is inadmissible except as provided by the Louisiana Code of Evidence or other legislation. La. C.E. art. 802; State v. Dyer, 00-1866 (La.App. 5 Cir. 4/24/01), 794 So.2d 1, 12.
A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements are admitted not to prove the truth of the assertion, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the officer. State v. Dyer, supra at 12. In State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, cert. denied, *880 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000), the Louisiana Supreme Court explained:
Information about the course of a police investigation is not relevant to any essential elements of the charged crime, but such information may be useful to the prosecutor in "drawing the full picture" for the jury. However, the fact that an officer acted on information obtained during the investigation may not be used as an indirect method of bringing before the jury the substance of the out-of-court assertions of the defendant's guilt that would otherwise be barred by the hearsay rule. [Citations omitted].
Broadway, supra, at 809.
The Broadway court, quoting the supreme court's earlier opinion of State v. Hearold, 603 So.2d 731, 737 (La.1992), further stated:
Absent some unique circumstances in which the explanation of purpose is probative evidence of a contested fact, such hearsay evidence should not be admitted under an "explanation" exception. The probative value of the mere fact that an out-of-court declaration was made is generally outweighed greatly by the likelihood that the jury will consider the statement for the truth of the matter asserted.
State v. Broadway, supra at 809.
In Broadway, defendant contended that the prosecutor presented hearsay testimony from two police officers that a witness, a co-perpetrator who did not testify at trial, implicated defendant as one of the principals in the murder. The officers both testified that they learned of defendant's name during the course of their interview with the co-perpetrator. The prosecutor argued that the testimony was being offered to show the sequence of events leading to defendant's arrest and not for the truth of the assertion, but, later, argued the truth of the assertion during her closing argument. The supreme court found the testimony that a co-perpetrator had identified defendant by name as a participant in the crime to be inadmissible hearsay. The supreme court, however, ultimately determined that the admission was harmless error.
In this case, Detective John Carroll was called to testify after co-defendant, Stephen Roy, refused to testify. During Detective Carroll's testimony, he was asked about his investigation. During direct examination of Detective Carroll by the prosecutor but before Detective Carroll mentioned Stephen Roy, defense counsel objected on the basis the information the prosecutor was seeking, the identification of defendant by Stephen Roy, was hearsay. The State responded the officer was only testifying about what he saw, heard and did in his investigation and, therefore, it was not hearsay. The trial court ruled that the officer's testimony on the issue was admissible.
As a result, Detective Carroll testified that, after he interviewed Stephen Roy, he compiled a photographic lineup that contained defendant's picture and showed the lineup to Roy. After viewing the lineup, Roy identified defendant. Detective Carroll testified that he interviewed defendant and obtained a confession from defendant to his participation in the armed robbery. When defense counsel cross-examined Detective Carroll, he specifically elicited that Stephen Roy had been shown two lineups, one in which he identified defendant. However, we note that Detective Carroll did not testify, either on direct or cross-examination, as to the purpose of Roy's identification, i.e., that defendant was a participant in the armed robbery.
*881 In analyzing this testimony under Broadway, we note that, although the information was presented under a so-called "explanation" exception to the hearsay rule, the testimony here was used as an indirect method of placing before the jury the substance of an out-of-court assertion implicating defendant in the crime. In other words, Roy did not testify that he identified defendant in a lineup so the State used Detective Carroll to explain that, during his investigation, Roy identified defendant in a lineup. Even though Detective Carroll did not testify that Roy identified defendant as a participant in the armed robbery, the fact that defendant was identified by a co-perpetrator, who had already pled guilty to this crime, was important because neither of the victims could identify defendant as a perpetrator of the armed robbery. Under Broadway, we find that Detective Carroll's testimony that co-defendant Roy identified defendant from a photographic lineup was inadmissible hearsay.
In his third assignment of error, defendant contends that the erroneous rulings of the trial court were not harmless error.[3] The admission of inadmissible hearsay is subject to a harmless error analysis. State v. Ditcharo, 98-1374 (La. App. 5 Cir. 7/27/99), 739 So.2d 957, 963, writ denied, 99-2551 (La.2/18/00), 754 So.2d 964. The proper inquiry is whether the guilty verdict rendered was surely unattributable to the error. Factors to be considered in making this determination include: 1) the importance of the witness' testimony; 2) the cumulative nature of the testimony; 3) the existence of corroborating or contradictory evidence regarding the major points of the testimony; 4) the extent of cross-examination permitted; and 5) the overall strength of the State's case. Id. at 963.
Here, although Detective Carroll's testimony may have been important, it was clearly cumulative considering defendant's confession, which was played to the jury before Detective Carroll testified. Further, the victims' account of the events corroborated defendant's confession. Finally, the defense was allowed full crossexamination of Detective Carroll on Roy's identification of the defendant. We find that the hearsay testimony was essentially cumulative to defendant's confession and, thus, the guilty verdict was unattributable to the error. Based on the foregoing, we find that the erroneous admission of Detective Carroll's testimony regarding the co-perpetrator's identification of defendant as a participant in the armed robbery was harmless error.
Lastly, according to La.C.Cr.P. art. 920, we have reviewed the record for errors patent and found none requiring remand.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Co-defendant, Stephen Roy, who was also charged with armed robbery, pled guilty before trial. His conviction is not the subject of this appeal.
[2] We note that Horne, which is factually identical to this case, was decided in a different procedural context than this case. Defendant in this case moved for a mistrial during the State's opening statement and renewed that motion after Roy refused to testify, whereas defense counsel in Horne objected during the prosecutor's opening statement and later moved for a new trial based on the State's failure to produce the testimony. The procedural variance does not affect the reasoning or result.
[3] In this assignment of error, defendant asserts that both rulings of the trial court of which he complains do not constitute harmless error. We found no error in the trial court's denial of defendant's motion for mistrial. Therefore, a harmless error analysis pertaining to defendant's first assignment of error is moot.