STATE OF LOUISIANA
v.
COREY W. OLIPHANT AND
NICHOLAS ANDRE OLIPHANT.
No. 07-1210.
Court of Appeals of Louisiana, Third Circuit.
April 30, 2008
Not Designated for Publication
VAN HARDIN KYZAR, District Attorney, ROBERT STUART WRIGHT, Assistant District Attorney, Counsel for: State of Louisiana.
ATTLAH DENIECE BURRELL, Attorney at Law, Counsel for Defendants, Corey W. Oliphant, Nicholas Andre Oliphant
COREY W. OLIPHANT, Louisiana State Penitentiary Angola, In Proper Person.
NICHOLAS ANDRE OLIPHANT Winn Correctional Center In Proper Person.
Court composed of SAUNDERS, SULLIVAN, and GENOVESE, Judges.
SAUNDERS, Judge.
Brothers Corey W. and Nicholas Andre Oliphant were found guilty of armed robbery, a violation of La.R.S. 14:64, by a jury on January 17, 2007. Corey was sentenced to forty years at hard labor, without the benefit of parole, probation, or suspension of sentence, and Nicholas was sentenced to twenty years at hard labor, without the benefit of parole, probation, or suspension of sentence. Neither Defendant filed a motion for reconsideration of their sentences.
Defendants have filed a timely appeal, alleging three assignments of error as follows: The evidence was insufficient to sustain the convictions for armed robbery; the trial court erred when it allowed "faulty" evidence of photographic lineup to be admitted at trial; and the trial court erred when it did not clarify the sentences pursuant to the firearm statute. La.R.S. 14:64.3
For the following reasons, we affirm. Defendants' assignments are without merit.

FACTS:
On April 23, 2005, one of the Defendants, armed with a pistol, entered Tobacco Warehouse in Natchitoches, Louisiana, and robbed the store of approximately seven hundred dollars. After leaving the store, he got into a car with the other Defendant, and the two men drove away.

ASSIGNMENT OF ERROR NUMBER 1:
For their first assignment of error, Defendants argue the evidence was insufficient to sustain verdicts of guilty of armed robbery. They argue there was no direct or sufficient circumstantial evidence given at trial which linked them with the crime.
When reviewing the sufficiency of the evidence, this court has held as follows:
In considering questions of sufficiency of the evidence, a reviewing court must consider the evidence presented in the light most favorable to the prosecution and consider whether a rational trier of fact could have concluded that the essential elements of the offense were proven beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court defers to rational credibility and evidentiary determinations of the trier of fact. State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50.
State v. Chesson, 03-606, p. 5 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 172, writ denied, 03-2913 (La. 2/13/04), 867 So.2d 686.
In the current case, there were no eyewitness identifications of Defendants. They were convicted on circumstantial evidence alone, which they argue was insufficient. When circumstantial evidence is involved, La.R.S. 15:438 provides that "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." In cases where the defendant asserts that he was not the person who committed the crime, the Jackson rationale requires the State to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Johnson, 38,927 (La.App. 2 Cir. 11/23/04), 887 So.2d 751. Thus, the issue before this court is whether the jury, when viewing the evidence in a light most favorable to the State, could have found that all reasonable hypotheses of innocence were excluded. State v. Dotson, 04-1414 (La.App. 3 Cir. 3/2/05), 896 So.2d 310.
Defendants were charged with armed robbery. Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64. The following testimonies were given at trial.
Riley Stanfield, a retired detention officer, testified that he lived on Hancock Street, behind the small strip mall where Tobacco Warehouse is located. He was working on his front lawn about two o'clock in the afternoon on April 23, 2005, when he saw a man in a dark sweatshirt with the hood pulled over his face run through the yard of the house directly behind the stores, jump a small fence, and get into a car parked across the street from Tobacco Warehouse. The man had something in his hand. The car, an older model, white Lincoln Towncar, was parked next to Radio Shack. There was a black man sitting on the driver's side of the car. The witness testified that he noticed that the molding on the car "down under the bottom of the door was missing." He did not get a good look at either the man running or the driver of the car. He stated the driver's face was not covered or disguised. When shown a photographic line-up, he could not identify the man running or the driver. He could not identify Defendants at trial as the two men.
Joel Mitchell, an officer with the Natchitoches Parish Sheriff's Office, testified that he was on patrol the day of the robbery and that he had been notified to be on the lookout for an older model, white Lincoln Towncar. At approximately four o'clock in the afternoon, the spotted a white Lincoln Towncar at a four-way stop. The Towncar failed to stop at the stop sign. The officer testified that he followed the car a few "hard" turns "as if it was an attempt to get away from me." He stopped the Towncar behind a funeral home. The driver was Nicholas. The car was registered to Odell Oliphant. He asked Defendant if he had a gun in the car. He stated that Defendant hesitated, but after he asked again, Defendant told him he did. Trooper Mitchell handcuffed Defendant and retrieved the gun. He testified it was a "snub nose" pistol.
Damien Spillman was an officer with the Natchitoches City Police Department at the time of the robbery. He testified that he interviewed Nicholas at the police station. Defendant told him he had been home all day. He said his brother, Corey, would verify that he had not left the house. Officer Spillman went to the brothers' house and asked Corey to go to the police station. Corey agreed to do so, saying that he was about to go to the police station anyway because he had heard his brother had been picked up. Initially, Corey told the officer he had worked the night shift and had slept most of the day, but then on the way to the station, he told the officer that he had gone to a friend's house at about ten thirty in the morning to cut hair and had cut hair all day. Later, at the station, he admitted he had not worked the night before and said he had not seen his brother earlier in the day.
Officer Spillman testified that Corey said "he had just started cutting hair again when he heard that Nicholas had been stopped." Officer Spillman noted that Nicholas was not stopped until four o'clock that afternoon. He testified that he asked Corey for his sock, which Defendant readily gave to him, then he called the officer who was the tracking dogs' handler for the police department at the detention center to meet him at Tobacco Warehouse. The next day he searched the Lincoln Towncar and found two items made of a pantyhose-type of material in the back seat of the car.
Jeff Franks, a detective with the Natchitoches City Police Department, assisted with the interview of the two brothers. He stated that Nicholas told him he and his brother had gone out earlier during the day to Wardsworth's to buy cigarettes for their mother. The detective said that Corey told him they had gone to McFarland's to purchase the cigarettes. The detective got a search warrant for Defendants' house but did not find any clothing resembling the clothing the robber wore, nor did he find any evidence of the money taken from Tobacco Warehouse.
Jared Bennett worked at Tobacco Warehouse on the date of the robbery. He testified that a young, black man came into the store at approximately two o'clock in the afternoon. The man had a pistol and instructed him to empty the cash register. The man was dressed in black pants and a dark sweatshirt with the hood pulled up and a "neck gator around his chin."
Mr. Bennett was shown the gun taken from Nicholas. He testified the robber had a similar gun, but he could not make a positive identification because the gun was covered by the robber's hand. On cross-examination, the victim admitted that at the preliminary hearing he had testified that he told Officer Spillman the gun was not the gun used in the robbery.
The victim stated he put seven to eight hundred dollars into a small paper bag and gave it to the robber. He was shown a photographic line-up, but he could not identity any of the men as the robber with certainty. However, when he was asked to "guess or . . . . take your best shot," he identified the wrong man. At trial, he stated, "I could see from around his up...uh, his upper forehead to his chin. The wrap was then[sic] and stretched so I could get a good image of his face." He could not identify either Defendant at trial as the man who robbed the store.
Julie Beard was also working at Tobacco Warehouse on the day of the robbery. She described a man in a black, hooded sweatshirt, wearing a "black wrap" around his chin. She described the man as "a black male in his early 20's and he had brown eyes and short hair. No facial hair that I saw." She was shown the gun taken from the Lincoln Towncar and thought the gun was similar to the gun the robber used but stated that most of the gun was covered by the robber's sleeve. She also picked the same wrong man in the photographic line-up that Mr. Bennett had picked and could not identify either Defendant as the robber at trial.
Roy Gallien, an officer with the Natchitoches Parish Detention Center and one of the tracking dog handlers, testified that he was asked to take the dogs to the Tobacco Warehouse. He took two of the bloodhounds which are used by the detention center for tracking persons. He stated he was given a sock, and he took the dogs out one at a time and gave them the sock to smell. Each dog tracked around behind the area where Tobacco Warehouse is located, to a fence, and then to a ditch next to an asphalt area, where they stopped because "it's harder to track on asphalt." He further testified that he was told the dogs tracked the same route more or less taken by the robber.
Finally, Pat Wojtkiewicz, a technical director for North Louisiana Crime Laboratory, testified. He was accepted by the trial court as an expert in DNA analysis. He stated he had tested for DNA on the gun found in the Lincoln and on each of the pantyhose found in the back of the Lincoln. He stated that he was able to extract DNA off the trigger of the gun and that Nicholas could not be excluded as a donor as there was a ninety-nine percent chance that the DNA belonged to Nicholas. The witness also testified that he was able to extract DNA samples from both of the pantyhose and that Nicholas and Corey could not be excluded as donors of DNA found on both of the pantyhose.
The evidence that the State argued linked Defendants to the crime was the Lincoln Towncar with the missing molding, the pantyhose pieces located in the car with both Defendants' DNA on each piece, the bloodhounds following a scent taken from Corey's sock around to the back of the Tobacco Warehouse, the similarity of the gun used during the robbery with the gun retrieved from the car Nicholas was driving, and Defendants' inconsistent and contradictory statements made to the police regarding their whereabouts that day.
There was no direct evidence linking the Defendants with the crime. There was no eyewitness testimony identifying them as either the robber or the man waiting in the Lincoln Towncar outside. The Lincoln did not belong to either of the Defendants and there was no testimony that either of them routinely drove the car. None of the witnesses who saw the robber testified as to his stature.[1] The descriptions of the robber were commonplace characteristics. There was no clothing found matching the clothing the robber wore, nor was there any money found consistent with the amount of money taken from the victims. In cases where an essential element of the crime is not proven by direct evidencein this case, identityLa.R.S. 15:438 applies.
As an evidentiary rule, [La.R.S. 15:438] restrains the fact finder in the first instance, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove and, second, to convict only if every reasonable hypothesis of innocence is excluded. Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. State v. Shapiro, 431 So.2d 372 (La.1982); State v. Hammontree, 363 So.2d 1364 (La.1978).
State v. Wade, 33,121, pp. 1-2 (La.App. 2 Cir. 5/15/00), 758 So.2d 987, 990, writ denied, 00-2160 (La.9/28/01), 797 So.2d 684.
The State made little attempt at trial to present evidence or argument indicating with any certainty which Defendant was the robber and which was the man waiting in the Lincoln Towncar. In its closing argument, the State indicated that it was Corey who was the robber because of the bloodhounds tracking the route the robber took across a yard and over a fence from a scent taken from his sock. In its brief to this court, the State argues that Nicholas was driving the getaway car.
In order to convict the man waiting in the car of armed robbery, the State would have to prove beyond a reasonable doubt that the man in the car was concerned in the commission of the robbery. Louisiana Revised Statutes 14:24 provides that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." See also Dotson, 896 So.2d 310.
The supreme court has stated that:
All persons `concerned in the commission of a crime' are principals, La.R.S. 14:24, but this rule has important qualifications. Only those persons who knowingly participate in the planning or execution of a crime are principals.
State v. Knowles, 392 So.2d 651 (La.1980).
Mere presence at the scene is therefore not enough to `concern' an individual in the crime." State v. Pierre, 93-893, p.4 (La. 2/3/94), 631 So.2d 427, 428.
Taking into consideration the above jurisprudence and facts of the case, we will discuss the sufficiency of the evidence as to each Defendant.

Nicholas Oliphant:
We find that the circumstantial evidence was sufficient to allow the jury to conclude beyond a reasonable doubt that Defendant drove the getaway car and that he was a participant in the robbery. He was found driving the car two hours later. Trooper Mitchell testified that it appeared as if Nicholas was trying to evade him. He was in possession of a gun similar to the gun used during the robbery which had his DNA on it. He was in possession of pantyhose material with his DNA on it. Officer Spillman testified that Defendant told him he had been home all day prior to being stopped in the car and that his brother could verify that he had not left the house. However, Corey did not verify that Nicholas had not gone out earlier as Nicholas stated he would. Furthermore, Detective Franks testified that this Defendant said that he had gone out earlier in the day to purchase cigarettes for his mother.
Conflicting voluntary statements made to the police can be indicative of a guilty mind. State v. Wiley, 03-854 (La.App. 5 Cir. 4/27/04), 880 So.2d 854. Considering the circumstantial evidence and Nicholas' conflicting statements, his conviction is affirmed.

Corey Oliphant:
The State argued that Corey was the man who robbed Tobacco Warehouse on April 23, 2005, based on the evidence that the bloodhounds followed the route taken by the robber from a scent taken from Defendant's sock.[2] There was eyewitness testimony that a man in a dark, hooded sweatshirt robbed Tobacco Warehouse. There was eyewitness testimony that a man in a dark, hooded sweatshirt ran behind the Tobacco Warehouse, through a backyard and over a small fence, immediately after the robbery and got into an older model, white Lincoln Towncar. The Towncar Nicholas was stopped in was positively identified by the eyewitness as the vehicle the hooded man got into. The eyewitness was certain of his identification of the car because the Towncar was missing its "molding" from under the door panel. The two victims testified that the gun found in the car was similar to the gun used in the robbery. One of the victims testified the pantyhose found in the back of the car were similar to the item wrapped around the lower part of the robber's face. Both pantyhose contained Corey's DNA.
In State v. Johnson, 38,927 (La.App. 2 Cir. 11/23/04), 887 So.2d 751, the second circuit found that the circumstantial evidence was sufficient to convict Johnson of armed robbery despite the fact that no one could identify him as the robber. Following the direction in which the robber fled, the police found Johnson minutes later in a backyard with a shotgun and a mask very similar to what the robber used. He was attempting to hide himself and was dressed in the same type of clothes the robber wore. He also had a sum of money in his possession consistent with the amount of money taken. Johnson maintained he had dropped a friend off near the store that was robbed, then the friend came running back and gave him the mask and gun before he fled. Our second circuit stated that "[h]ere, the jury could have found that the alternative hypothesis suggested by defendant was not reasonable under the circumstances of this case." Id. at 757.
We find that the evidence, taken in a light most favorable to the State, was sufficient to sustain the verdict of armed robbery. There was evidence of Corey's DNA on the pantyhose material found in the Lincoln Towncar which the victims identified as being the same as what the robber attempted to cover his face with. There was testimony that the bloodhounds followed the route the robber took when he left Tobacco Warehouse from a scent taken from Defendant's sock. Finally, conflicting voluntary statements made to the police can be indicative of a guilty mind. Wiley, 880 So.2d 854. Officer Spillman testified that this Defendant first told him he was home asleep all day and did not see his brother, then he said he went to a friend's house late morning to cut hair. Corey said they went out once together to buy their mother cigarettes and mentioned one place, but Nicholas said they went to purchase the cigarettes at a different place. Therefore, Defendant's conviction is affirmed.

ASSIGNMENT OF ERROR NUMBER 2:
We note that in brief, Defendants listed the second assignment of error as "[w]hether the trial court errored[sic] in allowing the State, [sic] to introduce faulty evidence of line identification in violation of the defendants', [sic] right to due process of law under the United States 14th Amendment?" However, Defendants do not argue the issue as stated. Accordingly, we will not address that particular claim. Uniform Rules  Courts of Appeal, Rule 2-12.4.
Instead, in brief, Defendants argue that the trial court erred when it permitted the officers to testify as to the various statements made by each Defendant during interviews and interrogations. Defendants further argue that the taking of Corey's sock was an illegal search and seizure. Moreover, Defendants argue that the police dogs acting on the scent of Corey's sock at the crime scene, was a mere acknowledgment that, at some time or another, he was a customer of the establishment and not a suspect. Therefore, they assert that such evidence should have been ignored and not admitted by the trial court because the test was not conducted truthfully and fairly with a random test control subject, i.e., several socks for the dogs to act upon their scents. Further, they contend that the testimony regarding the police dog's behavior, or reaction to Corey's sock's scent, should have been inadmissible due to the hearsay nature of the testimony because the dogs were not present to testify and offer corroboration of the testimony that the dogs reacted to the sock's scent.
At trial, Officer Spillman testified that Nicholas told him that he was home all day prior to being stopped and that his brother could verify that fact. Officer Spillman then located and spoke with Corey. He testified that Corey agreed to go to the police station with him and on the way first told him that he had slept all day; later, he told Officer Spillman that he had been at a friend's house cutting hair in the late morning. At the police station, he told the officer he had not seen his brother at all that day. Based partly on these contradictory statements, the brothers were arrested for the armed robbery.
Hearsay is an oral or written statement, other than one made by the declarant while testifying at the present trial, offered to prove the truth of the matter asserted. La.Code Evid. art. 801(A)(1) and (C).
A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements are admitted not to prove the truth of the assertion, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the officer.
State v. Antoine, 02-1068, p. 8 (La.App. 5 Cir. 2/25/03), 841 So.2d 874, 879.
Officer Spillman's testimony regarding the Defendants' statements was an explanation of what he did in response to Defendants' statements, and, further, why the brothers were eventually charged with the crime.
Furthermore, as pointed out by the State, Defendants did not file a motion to suppress or object to Officer Spillman's testimony relating to the statements at trial. Louisiana Code of Criminal Procedure Article 841 provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Accordingly, Defendants cannot now raise the issue on appeal.
Defendants argue that the taking of Corey's sock was an illegal search because Officer Spillman "did not honestly alert defendant of his Constitutional Right to Due Process against self incrimination by stating the true nature and reason for the request to take defendants[sic] sock from defendant." However, Defendants did not file a motion to suppress the evidence based on an illegal search or seizure prior to trial or object to the testimony on that basis at trial. Therefore, Defendants are precluded from raising the issue on appeal. Id.
Moreover, we note that Officer Spillman did not testify that the bloodhounds followed the route the robber took after he left Tobacco Warehouse; therefore, even if they could, the dogs could not have corroborated his testimony. The testimony of Officer Gallien, one of the Natchitoches Parish Detention Center's tracking dogs' handlers, established his and the dogs' credentials. However, again, as pointed out by the State, Defendants did not file a motion to suppress the evidence or object to the testimony regarding the tracking dogs at trial. Accordingly, Defendants are precluded from raising the issue on appeal. La.Code Crim.P. art. 841.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER 3:
For their third assignment of error, Defendants allege that the trial court imposed indeterminate sentences. Counsel for Defendants assert that the trial court failed to pronounce sentence upon them pursuant to La.R.S. 14:64.3, which provides for an additional penalty in the event the dangerous weapon used in the commission of the armed robbery was a firearm.
At the time of the commission of the crime, La.R.S. 14:64.3 provided:
When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
Defendants were charged by bill of information as follows: "COUNT 1: WHILE ARMED WITH A DANGEROUS WEAPON, ROB TOBACCO WAREHOUSE, A FELONY IN VIOL. OF R.S. 14:64." The State did not charge Defendants with a violation of La.R.S. 14:64.3, nor did the State file a written notice prior to trial of its intent to invoke the firearm statute. See State v. Jackson, 480 So.2d 263 (La.1985), State v. Robinson, 06-464 (La.App. 5 Cir. 12/12/06), 947 So.2d 783, and State v. Weaver, 38,322 (La.App. 2 Cir. 5/12/04), 873 So.2d 909, where the courts held that in order to invoke La.R.S. 14:64.3, the State must either charge an accused with an armed robbery involving a firearm or provide adequate written notice of its intent to invoke the applicable statute. Because the State did not do either of these, the Defendants cannot now be charged with violating La.R.S. 14:64.3. Thus, the sentence that each Defendant received is determinate. Accordingly, the trial court did not impose indeterminate sentences on Defendants.

CONCLUSION:
Defendants' convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] We note that during opening statements, the State told the jury that the victims had given the police a description of the robber as five feet ten inches to six feet tall and weighed one hundred seventy-five pounds. We further note that defense exhibit "Corey-1" includes a suspect rap sheet of Defendant Nicholas which indicates he was six feet tall and weighed two hundred pounds at the time of his arrest. There was no evidence of Corey's height and weight in the record before this court.
[2] Although the State had prepared a hand-drawn map showing the layout of Tobacco Warehouse and the surrounding area, there were no indications made on the map of where the car was located in relation to the Tobacco Warehouse, the route the hooded man took from around back of the store to the car, or the route the two dogs followed to the edge of the asphalt parking lot.