862 So.2d 240 (2003)
STATE of Louisiana
v.
William SMITH.
No. 03-KA-866.
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 2003.
*242 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark, Doug Freese, Assistant District Attorneys, Gretna, Counsel for Plaintiff-Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, Counsel for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and JAMES L. CANNELLA.
DUFRESNE, Chief J.
The Jefferson Parish District Attorney filed a bill of information charging defendant, William Smith, with armed robbery and aggravated burglary in violation of *243 LSA-R.S. 14:64 and 14:60.[1] After pleading not guilty, defendant filed a motion to appoint a sanity commission and was found incompetent to stand trial. He received jail-based psychiatric treatment, as ordered, and was subsequently found competent to stand trial.
Defendant thereafter proceeded to trial on the armed robbery charge. After considering the evidence presented, the twelve person jury found him guilty as charged. The trial judge sentenced him to sixty years at hard labor without the benefit of parole, probation or suspension of sentence. The state then dismissed the aggravated burglary charge and filed a multiple offender bill of information alleging defendant to be a second felony offender based on a prior conviction for possession of cocaine. After a hearing, the trial court found defendant to be a second felony offender, vacated his original sentence, and imposed an enhanced sentence of 150 years pursuant to the provisions of LSA-R.S. 15:529.1. Defendant now appeals.

FACTS
In the early morning of September 14, 2000, Chanda Johnson was sleeping on a sofa in her apartment on Tallowtree Lane with her fifteen-month-old son lying on her chest when the front door was kicked open. Ms. Johnson was grabbed off the sofa and thrown to the stairs. The perpetrator yelled profanities and demanded where "it" was. Ms. Johnson indicated "it," a Crown Royal sack containing approximately $60, was under the sofa pillow. The perpetrator grabbed the sack and voiced his discontent with the meager contents of the sack.
Ms. Johnson was then shot twice. Her injuries were so severe that she was not expected to live. The record reflects the victim had approximately eight or nine full surgeries and a total of thirty surgical procedures as a result of her injuries.
Both the burglary and homicide units of the Jefferson Parish Sheriff's Office investigated the incident. During its investigation, the police developed defendant as a suspect. The police went to defendant's residence and brought defendant in for questioning on an unrelated incident, aggravated battery, which occurred eleven days prior and involved the same type of assault rifle used in the current incident.
Defendant gave two statements. His first statement pertained to the unrelated aggravated battery incident. In that statement, defendant admitted having a Mac 90 assault rifle, the same type of gun that was used to shoot Ms. Johnson. He also asserted an alibi for the current incident by stating he was in Algiers with a friend at the time the victim was robbed and shot.
After his first statement, defendant was brought to several locations in an attempt to corroborate his alibi. When confronted with the problems with his alibi, defendant gave a second statement during which he admitted his participation in the robbery and shooting of the victim. In his second statement, defendant explained that, in the early morning hours of September 14, 2000, he and three of his friends, David Williams, Marvin Robinson, and Richard Mitchell, drove around Gretna looking for someone to rob. Being unsuccessful, they returned to the "Mary Poppins" area of Jefferson Parish.[2] According *244 to defendant's statement, Williams and/or Robinson indicated they knew someone in an apartment on Tallowtree that sold "weed." Mitchell, who was driving, parked the car behind an apartment complex on Tallowtree, and defendant, Williams and Robinson jumped out and ran toward the victim's apartment. Defendant stated Robinson had the gun, a cherry brown Mac 90 with a banana clip.
Defendant stated Robinson kicked in the door to the victim's apartment and ran inside with Williams. Defendant claimed he stayed outside as a lookout. Defendant overheard Williams and Robinson ask "where its at." He subsequently saw Williams fire two shots toward the stairs at which time he heard a female screaming. Thereafter, all three perpetrators ran back to the car with only a purple Crown Royal sack that was taken from the home. Defendant admitted he knew they were going to the apartment to rob the victim but denied there was any discussion about killing anyone.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, defendant asserts that the trial court erred in allowing hearsay testimony. He specifically complains about Detective Gorman's testimony regarding statements that co-defendants Mitchell and Robinson made to the police. When the prosecutor asked Detective Gorman whether Mitchell admitted his own participation in the offense, defense counsel immediately objected on the grounds of hearsay. The prosecutor began to respond that it was a statement against interest when the trial court overruled the objection. Detective Gorman proceeded to state that Mitchell and Robinson both admitted their participation in the offense and that the statements established Mitchell as the driver of the getaway car. No additional inquiry was made into the substance of the co-defendants' statements.
On appeal, defendant claims that this testimony was improperly admitted. He argues that the testimony could not be admitted as a statement against interest because there was no showing the co-defendants were unavailable to testify at trial. He further contends that the admission of the hearsay was not harmless error because the statements were the only evidence that corroborated defendant's statement.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801. Hearsay evidence is not admissible except as otherwise specified in the Code of Evidence or other legislation. LSA-C.E. art. 802. Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Martin, 458 So.2d 454, 460 (La. 1984); State v. Sarrio, 01-543 (La.App. 5 Cir. 11/27/01), 803 So.2d 212, 223, writ denied, 02-0358 (La.2/7/03), 836 So.2d 86. A declaration against penal interest is a recognized exception to the hearsay rule that is admissible when the declarant is unavailable at trial. LSA-C.E. art. 804(B)(3); State v. Hammons, 597 So.2d 990, 995-996 (La.1992). In the present case, there was no showing that Mitchell and Robinson were "unavailable" to testify at trial as required by LSA-C.E. art. 804. On cross-examination, defense counsel asked Detective Gorman the whereabouts of Mitchell and Robinson. Detective Gorman replied, "They are in the Jefferson Parish Correctional Center I believe still." The prosecutor offered no explanation as to why *245 Mitchell and/or Robinson could not testify at defendant's trial. Since the parties were severed for trial, it is plausible the co-defendants were awaiting trial and would likely invoke their Fifth Amendment right against self-incrimination which would make them "unavailable" for purposes of LSA-C.E. art. 804(B)(3). However, there is no evidence in the record to support this possible explanation. Because there was no showing Mitchell and Robinson were "unavailable," their statements to Detective Gorman did not fall under the LSA-C.E. art. 804(B)(3) exception to the hearsay rule and were inadmissible.
The admission of inadmissible hearsay is subject to a harmless error analysis. State v. Antoine, 02-1068 (La. App. 5 Cir. 2/25/03), 841 So.2d 874, 881. The proper inquiry is whether the guilty verdict rendered was surely unattributable to the error. Factors to be considered in making this determination include: 1) the importance of the witness' testimony; 2) the cumulative nature of the testimony; 3) the existence of corroborating or contradictory evidence regarding the major points of the testimony; 4) the extent of cross-examination permitted; and 5) the overall strength of the State's case. State v. Antoine, 841 So.2d at 881.
The statements of Mitchell and Robinson played a minimal role in the case against defendant. The statements were only used to show that the co-defendants admitted their participation in the crime. While such evidence corroborated defendant's statement that he committed the offense with Mitchell and Robinson, it did nothing to establish any of the essential elements of the crime.
In arguing the admission of the hearsay was not harmless error, defendant contends the statements of Mitchell and Robinson were the only evidence that corroborated his statement. To the contrary, the victim's statement corroborated various aspects of defendant's statement. The victim testified there was more than one perpetrator. She stated the perpetrators bashed open the door which corroborated defendant's statement that entry was gained into the apartment by kicking in the door. The victim explained her little boy was lying on her chest when the perpetrators broke into her apartment corroborating defendant's statement that he saw a little boy when he looked into the apartment. The victim testified she was shot twice while defendant stated Williams shot two times. The victim stated the perpetrators took a Crown Royal sack which corroborated defendant's statement that a purple Crown Royal sack was taken from the home.
The use of Mitchell's and Robinson's statements was simply cumulative to the testimony of the victim and defendant that more than one perpetrator committed the offense. Thus, we find any error in the admission of this part of Detective Gorman's testimony to be harmless. Based on the foregoing discussion, this assigned error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, defendant alleges ineffective assistance of counsel. He specifically argues that his trial counsel was ineffective for failing to object to references of other crimes evidence contained within his statement and Sergeant John Drury's testimony.
A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can be conducted, rather than direct appeal. State v. McIntyre, *246 97-876 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780, 787 (La. 1993); State v. McIntyre, supra.
In this case, we conclude that defendant's allegations of ineffectiveness would be better addressed by an application for post-conviction relief where an evidentiary hearing can be conducted. See State v. Smothers, 02-277 (La.App. 5 Cir. 12/30/02), 836 So.2d 559, 567, where this court concluded that the issue of whether defense counsel was ineffective for failing to object to hearsay testimony should be raised in an application for post-conviction relief because an evidentiary hearing may be warranted to fully explore the issues raised by the defendant.

ASSIGNMENT OF ERROR NUMBER THREE
In his third assigned error, defendant challenges his sentence as excessive. Defendant was convicted of armed robbery, and as a second felony offender, he faced an enhanced sentencing range between 49 ½ years and 198 years. LSA-R.S. 15:529.1. The trial judge sentenced defendant to 150 years. Defendant now claims that this sentence is excessive considering his role in the robbery. He notes the trial court based the sentence solely on the victim's injuries and failed to consider the following mitigating factors: 1) he was not the shooter; 2) his role in the robbery was limited to being a lookout; 3) he cooperated with the police and named the other perpetrators who were involved; 4) his prior conviction of possession of cocaine was not a violent crime; 5) he did not know the other perpetrators intended to shoot the victim; and 6) he has a mental disorder.
In the present case, defendant did not object to his enhanced sentence nor did he file a motion to reconsider his sentence pursuant to LSA-C.Cr.P. art. 881.1. Therefore, his sentence may only be reviewed for constitutional excessiveness. State v. Marshall, 02-747 (La.App. 5 Cir. 2/11/03), 841 So.2d 866, 872, writ denied, 03-659 (La.6/6/03), 845 So.2d 1090.
Both the United States and the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. of 1974, art. I, § 20. A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. Trial judges are granted great discretion in imposing sentences and sentences will not be set aside as excessive absent clear abuse of that broad discretion. State v. Bacuzzi, 97-573 (La.App. 5 Cir. 1/27/98), 708 So.2d 1065, 1068-1069.
In reviewing a sentence for excessiveness, this court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. State v. Brown, 99-172 (La. App. 5 Cir. 9/28/99), 742 So.2d 1051, 1056, writ denied, 99-3148 (La.4/20/00), 760 So.2d 340. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been *247 more appropriate. State v. Watts, 99-311 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145.
In the present case, the trial judge, in imposing the 150-year enhanced sentence, noted that the victim was shot in the back and required seven or eight surgeries. The prosecutor corrected the judge stating the victim underwent eight or nine full surgeries and approximately 30 surgical procedures. The trial court further stated the victim, who could barely walk to the witness stand, continues to receive medical treatment and faces future surgeries. The trial court admonished defendant by stating he caused severe injury to a helpless woman who was holding a child.
In addition to the reasons expressed by the trial judge, we further note that armed robbery is a serious offense against the person. Defendant participated in a crime wherein the door to the victim's apartment was kicked open while she slept on the couch holding her toddler son. The victim's additional children were upstairs. The victim was shot twice resulting in such severe injuries that she was not expected to live, as evidenced by the investigation of the crime by the homicide division. Two years after the crime, the victim continued to visibly suffer from her injuries.
Contrary to defendant's assertion, the fact he did not actually enter the apartment, take the money, or fire the bullet that struck the victim does not entitle him to a lesser sentence. All persons concerned in the commission of a crime, whether present or absent, are equally culpable. State v. Hampton, 98-0331 (La.4/23/99), 750 So.2d 867, 880, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999). Additionally, although defendant suffers from a mental disorder (i.e., bipolar disorder),[3] he knew what he was doing. He admitted knowing that he and his co-perpetrators went to the victim's home to rob her. The trial judge was fully aware of defendant's mental state when she imposed sentence. Finally, the fact defendant's prior conviction was for a non-violent offense does not make his present sentence excessive. Defendant progressed from a non-violent crime to a violent crime that almost killed the victim.
Higher sentences for a second felony offender where the predicate offense is armed robbery have been upheld. See State v. Jackson, 96-661 (La.App. 5 Cir. 4/9/97), 694 So.2d 440, 451, writs denied, 97-1050 (La.10/13/97), 703 So.2d 609, and 97-1050 (La.10/13/97), 703 So.2d 609; State v. Jones, 560 So.2d 590 (La.App. 5 Cir. 1990); and State v. Sims, 02-1244 (La. App. 5 Cir. 4/29/03), 845 So.2d 1116.
Based on the foregoing discussion, we find that the enhanced sentence imposed by the trial judge is not constitutionally excessive. This assigned error is without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals one error which requires correction. While both the original commitment and the multiple offender commitment show defendant was advised of the two-year prescriptive period for filing an application for post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8, the transcript does not so reflect. Generally, *248 where there is a discrepancy between the transcript and the minute entry or commitment, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Thus, the trial court is hereby instructed to inform defendant of the two-year prescriptive period by sending written notice to defendant within ten days after the rendition of the appellate opinion and to file written proof in the record that defendant received such notice. State v. Miller, 02-729 (La.App. 5 Cir. 12/30/02), 836 So.2d 614, 618.
Accordingly, for the reasons set forth herein, the conviction and sentence of defendant are hereby affirmed. The case is remanded to the trial court with instructions to inform the defendant of the prescriptive period for seeking post-conviction relief.
CONVICTION AND SENTENCE AFFIRMED, REMANDED WITH INSTRUCTIONS.
NOTES
[1] Co-defendants, Richard Mitchell and Marvin Robinson, were also charged in the bill of information. The defendants were severed for purposes of trial.
[2] Detective John Drury explained the Mary Poppins area is comprised of the two streets of Orange Blossom and Tallowtree.
[3] During the sanity hearing, Dr. Richard Richoux testified defendant suffered from probable bipolar disorder.