880 So.2d 831 (2004)
STATE of Louisiana
v.
Foster TAYLOR.
No. 03-KA-1272.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 2004.
*832 Paul D. Connick, Jr., District Attorney 24th Judicial District, Andrea F. Long, Terry Boudreaux, Assistant District Attorneys, Gretna, LA, for Appellee.
*833 Jane L. Beebe, Gretna, LA, for Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
Defendant, Foster Taylor, appeals his conviction and sentence for armed robbery in violation of La. R.S. 14:64. Following his arraignment, Taylor pled not guilty, and was tried before a twelve-person jury. At the conclusion of the trial, Taylor was found guilty as charged. After the appropriate delays, he was sentenced to imprisonment at hard labor for thirty-five years without benefit of parole, probation, or suspension of sentence. A multiple bill was subsequently filed alleging Taylor to be a multiple offender, which allegations Taylor denied. The trial court found Taylor to be a second felony offender and vacated the original sentence, imposing a new sentence of forty-nine and one-half years without benefit of parole, probation, or suspension of sentence. Taylor has appealed.
At the trial, Tanya King, a night auditor at the Holiday Inn in Kenner, testified that on November 8, 2000, at approximately 12:00 or 12:30 a.m., she and Susan Cordes, another night auditor, were at the front desk. Ms. King was finishing a conversation with a bellman over a radio, and walked into the back office to hang up the radio. As she turned around to go back up front with Ms. Cordes, she saw a man, later identified as Taylor, wearing a Halloween mask and carrying a gun. Ms. King saw another man wearing a Halloween mask who was guarding the door. Ms. King identified State's Exhibit 3 as a photograph of the mask the gunman was wearing, and she described the gun as being slender, gray, and automatic.
The gunman pointed the gun at Ms. King and told her to be quiet and that nothing would happen to her. Grabbing the back of Ms. King's neck with his left hand, he put the gun under her chin. He pushed her to the front and told Ms. Cordes to get the money and to hurry up, giving her a red T-shirt in which to put the money. After Ms. Cordes brought the money, he brought both Ms. King and Ms. Cordes to the back room and told them to lie down on their faces, and the robbers left. Ms. King described the gunman as being tall and slender and the other man as being shorter and heavier.
Both women were terrified as they lay on the floor, thinking they were going to die. They subsequently heard someone punching in the code and were afraid that the gunmen had returned. When they turned around and saw John Riley, the bar manager, both women jumped up. Ms. Cordes grabbed the radio and called a deputy, and Ms. King called 911.
Ms. King testified that the back office was a secure area to which the public did not have access, and that the only way to gain entry to the area was to use an electronic code to open the door or to jump over the front counter. Ms. King testified that she was familiar with Derrin Smith, a maintenance worker at the hotel (who was also charged in the robbery), and that he had the code to get into the door so he could pick up and turn in keys.
Ms. Cordes testified at trial, and her testimony largely corroborated that of Ms. King. Additionally, Ms. Cordes testified that the robbers stole $250 that night. Further, she stated that she told Kenner Police Department Detective Michael Cunningham that she could not provide a description of the individuals who had robbed them because the two men were wearing masks, but that she could identify the mask and the clothes they were wearing. *834 Ms. Cordes was shown a photographic lineup by the district attorney's office, but she was unable to recognize anybody's face. However, she testified that the man shown in the photograph, top row, third picture, in State's Exhibit 5, was wearing a dark jean jacket that looked exactly like the jacket the man with the gunman was wearing. This was Taylor's photo.
Det. Michael Cunningham testified that he investigated the armed robbery. Ms. King and Ms. Cordes explained to him that during the robbery, one man wore a ski mask, and that the other man wore a Star Wars type mask. Det. Cunningham testified that Det. Ed Derringer of the New Orleans Police Department was investigating the shooting death of a Jamal Relyveld, and that he had recovered evidence from that shooting which included a Star Wars type mask and a silver-colored automatic handgun.
Det. Cunningham showed Ms. Cordes a photograph of that Star Wars mask which Ms. Cordes positively identified as the mask that the gunman was wearing. Det. Derringer also gave Det. Cunningham the name of the defendant, Foster Taylor, and his nickname "Ketchup," in order to assist him with the Holiday Inn armed robbery investigation. Det. Cunningham learned that Mr. Relyveld and Taylor had the same address.
Det. Cunningham met with David Moore, the general manager of the Holiday Inn, who informed him that his employee, Derrin Smith, had requested bereavement leave as a result of Mr. Relyveld's death. Mr. Moore provided Det. Cunningham with a copy of the bereavement leave and a copy of Mr. Relyveld's obituary notice. Det. Cunningham learned that Mr. Relyveld and Derrin Smith were half-brothers.
Det. Cunningham testified that he met with a Matthew Smith during the investigation, and that Mr. Smith told him that he had knowledge regarding the Holiday Inn armed robbery. Det. Cunningham took a taped statement from Matthew Smith and two statements from Derrin Smith, the second of which was admitted into evidence.
According to the witness, in his first statement of November 21, Derrin Smith stated that he had talked to Mr. Relyveld and Taylor about the possibility of a robbery, but that he did not think that they would go through with it. In his second statement of February 15, 2001, admitted into evidence Derrin Smith stated that he knew Mr. Relyveld and Taylor were going to commit the armed robbery.
Derrin Smith told Det. Cunningham that he was on the telephone with his brother Mr. Relyveld and Taylor on November 7, after 5:00 p.m., approximately eight hours prior to the armed robbery. Both were asking him specific questions about the security of the hotel and the layout of the front office, and that he provided both of them with the access code to the door. Mr. Relyveld knew which door to go into because he had been there. On the day after the robbery, Mr. Relyveld was killed in another armed robbery. Derrin Smith felt that if he had come forward previously, his brother may still have been alive. There was no doubt in his mind that Mr. Relyveld and Taylor committed the robbery. Following the second statement, Det. Cunningham arrested Derrin Smith as a principal to the armed robbery.
Matthew Smith testified that he knew Taylor and Mr. Relyveld, who were roommates, because he lived in the same apartment complex. He explained that, in November of 2000, he had known them for approximately one month. Mr. Smith had visited the two men almost every day because they had a television and he did *835 not. Det. Cunningham showed Mr. Smith a photographic lineup, and Mr. Smith identified number three as Taylor, who he knew as Torreyana Tates or "Ketchup."
When Matthew Smith went to the two men's apartment on November 9, Taylor and Mr. Relyveld were there. Taylor was counting penny wrappers and had money on the table. [Matthew] Smith asked Taylor where he had gotten the money, and Taylor said he had "hit a lick," which meant he had robbed someone. Taylor told Matthew Smith that he, Derrin Smith, and Mr. Relyveld had robbed the Holiday Inn where Derrin Smith worked.
Matthew Smith testified that he saw two guns in their apartment: one was a chrome-colored automatic 9 millimeter that was kept on top of the television in a box, and the other one was a .22 caliber revolver with a brown handle that was also kept on top of the television, but not in a box. Mr. Smith testified that the 9 millimeter gun belonged to Mr. Relyveld, and that the.22 caliber gun belonged to Taylor. Mr. Smith knew the gun belonged to Taylor because he saw Taylor carrying it around on his person.
After November 9, Taylor told Matthew Smith that he had hidden the gun in his back yard, and that he wanted [Matthew] Smith to go and get it. However, [Matthew] Smith did not go and get the gun, nor did he call the police because he did not want to get involved. [Matthew] Smith admitted that he and Taylor had had a fight approximately one week before the incident, and that he had tried to make up with Taylor, but that Taylor had held a grudge.
Mr. Moore, the general manager of the Holiday Inn, testified that, on November 8, 2000, Derrin Smith was employed by the hotel as a maintenance worker. Mr. Moore further testified that [Derrin] Smith gave the Human Resources Director a bereavement leave slip and an obituary notice in connection with the death of his brother, Jamal Relyveld, which Mr. Moore identified as State's Exhibits 1 and 2, respectively. Mr. Moore explained that, in order to collect for bereavement leave, the employee was required to fill out a personnel action form, or PAF, and produce a copy of the obituary from the Times-Picayune newspaper.
Mr. Moore explained that the area behind the front desk was known as the PBX office, that it was a secured area to which the public did not have access, and that in order to get through the door to gain access to the area, one had to punch in numbers on a keypunch number lock. He testified that [Derrin] Smith may have had access to that back area, that he should not have had the access code, but that some maintenance personnel did.
After hearing the evidence, the jury found Taylor guilty as charged.
Taylor alleges on appeal that the trial court erred in failing to grant the defense's motion for a new trial because there was insufficient evidence to support the conviction as to the identity of the perpetrator. He contends that, considering the fact that Matthew Smith and Taylor had a fight the week before the incident, and that Taylor had held a grudge against Matthew Smith, that Matthew Smith had every reason to lie. He urges that Matthew Smith had no credibility regarding either their relationship or the likelihood that Taylor would admit committing the robbery to him. Thus, Taylor alleges that the guilty verdict was contrary to the law and evidence.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable *836 doubt."[1] A review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.[2] A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt.[3]
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[4] When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438.
LSA-R.S. 14:64 defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
In addition to proving the statutory elements of the charged offense at trial, the state is required to prove the identity of the perpetrator.[5] Where the key issue is identification the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof.[6]
In the instant case, Taylor does not contend that the state failed to establish the elements of the crime of armed robbery. Rather, he alleges that there was insufficient evidence to conclude that he was the perpetrator of the armed robbery.
Derrin Smith, a Holiday Inn employee, admitted in his statement that he knew Taylor and Jamal Relyveld were going to commit the armed robbery at the Holiday Inn, and told Det. Cunningham that approximately eight hours before the robbery, he gave Taylor and Mr. Relyveld information regarding the security of the hotel, the layout of the front office, and the access code to the door.
Matthew Smith testified that he went to the apartment shared by Taylor and Mr. Relyveld on the day after the robbery and saw Taylor counting penny wrappers. He testified that Taylor told him that he and Mr. Relyveld had robbed the Holiday Inn where Derrin Smith worked, and that he, Taylor, had hidden the gun that was used in the robbery in the backyard.
Ms. Cordes testified that Taylor was wearing a mask during the robbery, and she positively identified a photograph of the mask, which had been obtained from an investigation involving the shooting death of Mr. Relyveld, who was the half-brother of Derrin Smith.
The state's case against Taylor rested to a great extent on the testimonies of both Derrin and Matthew Smith.
The reviewing court will not assess the credibility of witnesses, nor re-weigh evidence.[7] The trier of fact shall evaluate *837 credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness.[8] In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual finding.[9]
In the instant case, the jury obviously found Matthew Smith's testimony credible. Further, there was no internal contradiction or irreconcilable conflict between the physical evidence and Matthew Smith's testimony. There was evidence other than Mr. Smith's testimony, outlined hereinabove, which was used at trial. Viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. This assignment of error is without merit.
Taylor also argues that his forty-nine and one-half year sentence is constitutionally excessive. He contends that the trial judge clearly indicated that he should not be sentenced to 49½ years, but that she felt helpless to deviate from the legislative minimum. He asserts that the trial judge failed to articulate any reasons for the sentence, and that she failed to consider both mitigating circumstances and Taylor's background. The state responds that the sentence is not constitutionally excessive.
On June 19, 2002, the trial judge sentenced Taylor on the armed robbery conviction to imprisonment at hard labor for thirty-five years without benefit of parole, probation, or suspension of sentence. Prior to sentencing, the court noted that Taylor had a prior conviction, that he was twenty years old, that the evidence indicated that Taylor probably committed another robbery right after this robbery, that the victims testified in graphic detail, that Taylor was violent, and that he was unable to conform his behavior to the "safe social morays of your society."
It is the goal of this court that Foster Taylor be housed until such time that he passes the statistical point at which it is likely that he will not be violent. It is the Court's goal that Mr. Taylor be incarcerated until somewhere around the age of 50.
On July 17, 2002, the trial judge found Taylor to be a second felony offender, vacated the original sentence, and sentenced him to forty-nine and one-half years without benefit of parole, probation, or suspension of sentence. She did not provide reasons for her sentence. Following sentencing, defense counsel stated that he intended to appeal the excessiveness of the sentence, and that he intended to file a motion to have the excessiveness of the sentence reviewed. On August 7, 2002, Taylor filed a motion to have the sentence declared excessive.
On December 18, 2002, a hearing was held on the motion. Defense counsel argued that the sentence was excessive, noting that Taylor would be in jail until the age of 70. The trial judge asked if that was the minimum sentence, and defense counsel responded affirmatively. The trial judge stated in pertinent part:
Mr. Montgomery, I believe I agree with you, that it is a waste of time of the taxpayers' money to house this gentleman until he is 70 years old. I don't know too many 70 year olds capable of committing acts of violence or armed robberies. I think 65 is plenty long enough.

*838 However, I am constrained by the legislature by the State of Louisiana, who would rather spend money to the tune of $25,000 a year, rather than far less to put them in an old folks home. So I'm sorry, but I must deny your motion.
After the trial judge denied his motion, defense counsel noted his objection.
The record shows that Taylor filed a written motion to have sentence declared excessive, which actually appears to be a motion to reconsider sentence, in accordance with LSA-C.Cr.P. art. 881.1, and that he orally objected to the excessiveness of the sentence. However, he did not state the specific grounds on which the motion was based either in court or in his written motion. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness.[10] Accordingly, Taylor's sentence will be examined only for constitutional excessiveness.
A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering.[11] Trial judges are granted great discretion in imposing sentences and sentences will not be set aside as excessive absent clear abuse of that broad discretion.[12] The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.[13] This Court has considered three factors in reviewing a judge's sentencing discretion: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts.[14] The Louisiana Supreme Court has recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness.[15]
When a trial court determines that the minimum sentence mandated by LSA-R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment," or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge must reduce the sentence to one that would not be constitutionally excessive.[16] However, it is presumed that the mandatory minimum sentence under the Habitual Offender Law is constitutional.[17]
*839 In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is "exceptional, which ... means that because of unusual circumstances this Defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case."[18] When evaluating whether the defendant has met his burden, the trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. Further, if the trial court finds clear and convincing evidence that justifies reducing the sentence, the court cannot impose whatever sentence it may feel is appropriate. Rather, the trial court must impose the longest sentence that is not constitutionally excessive with specific reasons to explain why that sentence is the longest sentence that is not constitutionally excessive.[19]
Johnson emphasized that a downward departure from the minimum sentence mandated by LSA-R.S. 15:529.1 should only occur in "rare situations."
In the instant case, Taylor was convicted of armed robbery. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:64(B). The trial judge subsequently found Taylor to be a second felony offender, vacated the original sentence, and sentenced him under LSA-R.S. 15:529.1 to forty-nine and one-half years of imprisonment at hard labor. LSA-R.S. 15:529.1(A)(1)(a) provides in pertinent part:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction[.]
Thus, Taylor was subject to a sentence of forty-nine and one-half years to 198 years. He received the mandatory minimum of forty-nine and one-half years.
After serious consideration, we find that Taylor has not presented sufficient evidence to rebut the presumption of constitutionality of the sentence imposed and, therefore, that the statutory minimum sentence of forty-nine and one-half years is mandated and proper in this case. Here, Taylor pointed a gun at the night auditors, placing their lives at risk. The victims were terrified and thought that they were going to die. The evidence in the record indicates that Taylor is a violent man who committed another armed robbery right after this one. The fact his prior conviction was for a non-violent offense does not make his present sentence excessive.[20]
Furthermore, the jurisprudence supports the enhanced sentence.[21] While the *840 sentence is indeed, extensive, our Supreme Court has pointedly stated that:
Given the Legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution.[22]
This assignment of error is without merit.
The record was reviewed for errors patent according to La.C.Cr.P. art. 920.[23] LSA-R.S. 15:529.1 requires the trial court to advise a defendant of the allegations contained in the information, his right to a hearing and his right to remain silent.[24] In the present case, the record does not disclose that Taylor was advised of his rights prior to the multiple bill hearing. The failure of the trial court to advise the defendant of his right to a trial and to remain silent is harmless error when the multiple offender status is established by competent evidence offered by the State at a hearing, rather than by the admission of the defendant.[25]
In the instant case, Taylor denied the allegations of the multiple bill, and the State presented competent evidence at the hearing to establish his multiple offender status. Therefore, the trial court's failure to advise Taylor of the specific allegations against him and of his right to be tried and to remain silent was harmless error.[26]
At the time of Taylor's enhanced sentencing on July 17, 2002, the trial court advised him as follows:
And as the underlying sentence, I am informing you that you have two years to file a petition for Post Conviction Relief, complaining of the Constitutionality of the process. And that is from the date your conviction and sentence become final; and today is the day.
LSA-C.Cr.P. art. 930.8 provides that a court shall not consider an application for post-conviction relief filed more than two years after the judgment of the conviction and sentence has become final. The trial court's statement is confusing, in that the date the conviction and sentence becomes final is not the date of sentencing since the appeal is still pending. Also, it appears from the advisal that Taylor can only appeal constitutional issues pertaining to the underlying sentence and nothing else. Therefore, we remand the matter to the district court with instructions to inform Taylor of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings.[27]
For the foregoing reasons, Taylor's conviction and sentence are affirmed. We *841 remand the case to the district court with instructions for the trial court to correctly inform Taylor of the prescriptive provisions for seeking post-conviction relief.
AFFIRMED; REMANDED WITH INSTRUCTIONS
NOTES
[1] Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).
[2] Id.
[3] State v. Joseph, 01-1211 (La.App. 5 Cir. 4/10/02), 817 So.2d 174.
[4] State v. Shapiro, 431 So.2d 372, 378 (La. 1982).
[5] State v. Vasquez, 98-898 (La.App. 5 Cir. 2/10/99), 729 So.2d 65, 69.
[6] Id.
[7] State v. Rosiere, 488 So.2d 965, 968 (La. 1986); State v. Ellwood, 00-1232 (La.App. 5 Cir. 2/28/01), 783 So.2d 423, 427.
[8] State v. Rivers, 01-1251 (La.App. 5 Cir. 4/10/02), 817 So.2d 216, 219, writ denied, 02-1156 (La.11/22/02), 829 So.2d 1035.
[9] Id.
[10] State v. Hester, 99-426 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 103, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342.
[11] State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839.
[12] State v. Bacuzzi, 97-573 (La.App. 5 Cir. 1/27/98), 708 So.2d 1065, 1068-1069.
[13] State v. Watts, 99-311 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145.
[14] State v. Slang, 94-332 (La.App. 5 Cir. 11/16/94), 646 So.2d 1037, 1040-1041, writ denied, 94-3063 (La.4/7/95), 652 So.2d 1344.
[15] State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Cushinello, 01-109 (La. App. 5 Cir. 7/30/01), 792 So.2d 926, 929, writ denied, 01-2505 (La.9/20/02), 825 So.2d 1159.
[16] State v. Dorthey, 623 So.2d at 1280; State v. Ventress, 01-1165 (La.App. 5 Cir. 4/30/02), 817 So.2d 377, 383.
[17] State v. Johnson, 709 So.2d at 676; State v. Harbor, 01-1261 (La.App. 5 Cir. 4/10/02), 817 So.2d 223, 226, writ denied, 02-1489 (La.5/9/03), 843 So.2d 388.
[18] State v. Harbor, 817 So.2d at 227.
[19] State v. Johnson, supra;State v. Jerome 03-126 (La.App. 5 Cir. 4/29/03), 845 So.2d 1194.
[20] See State v. Smith, 03-866 (La.App. 5 Cir. 11/25/03), 862 So.2d 240.
[21] See State v. Pierre, 02-838 (La.App. 5 Cir. 12/30/02), 834 So.2d 1229, writ denied, 03-508 (La.10/17/03), 855 So.2d 755; State v. Williams, 00-1850 (La.App. 5 Cir. 4/11/01), 786 So.2d 785, writ denied, 01-1432 (La.4/12/02), 812 So.2d 666;); State v. Durden, 36,842 (La.App. 2 Cir. 4/9/03), 842 So.2d 1244, writ denied, XXXX-XXXX (La.11/26/03), 860 So.2d 1131.
[22] State v. Johnson, supra.
[23] See State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990).
[24] State v. Dearmas, 606 So.2d 567, 569 (La. App. 5 Cir.1992), overruled on other grounds in State v. Davis, 01-123 (La.App. 5 Cir. 7/30/01), 792 So.2d 126, 131.
[25] State v. Dearmas, supra.
[26] State v. Haywood, 00-1584 (La.App. 5 Cir.3/28/01), 783 So.2d 568.
[27] State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975, writ denied, 01-1719 (La.4/12/02), 812 So.2d 666.